Nathan R. Sobel, S.
At issue in this proceeding is the right of the trustees of the estate of the donor of a power of appointment to commissions (SCPA 2308) for paying but the appointive property to trustees appointed under the will of the donee of such power.
Testator Bernard H. Smith died in 1952. His will admitted to probate in this court created out of his residuary estate a marital deduction trust for his wife Lilia — one coupled with a general testamentary power of appointment. For later discussion, it is observed that under such a power Mrs. Smith could appoint to her estate or to her creditors or to creditors of her estate or to any other person she may wish (EPTL 10-3.2, subd. [b]). Under the express terms of the will she could also appoint outright or in further trust.
Mrs. Smith died on June 11, 1969, a resident of Connecticut. Her will has been admitted to probate in the Connecticut courts. By her will she expressly exercised her power of appointment. She first directed her own trustees to pay out of the appointive property all estate taxes on both the appointive property and her own estate assets. She then directed her own trustees to divide the remaining principal of the appointive property into *106 four shares, each such share to be held in further trust for her four grandchildren with remainder over to her great grandchildren. There are 10 such great grandchildren remainder-men represented in this proceeding by a guardian ad litem. Mrs. Smith appointed as her own trustees the same persons who were already acting as trustees under Mr. Smith’s will.
For later discussion it is also mentioned that the trustees under Mrs. Smith’s will originally obtained letters of trusteeship on each of the four trusts from the Connecticut court. Advised by their attorneys that Mrs. Smith’s will did not “ merge ” or “ blend ” the appointive property with her own estate, her trustees applied for and were issued letters out of this court. As noted, both sets of trustees are the same persons. As trustees appointed in 1952 under Mr. Smith’s will they were required to account in this court. In such account, they were required to turn over the principal of the widow’s trust to themselves as trustees appointed in 1971 to administer in this court, not the Connecticut court, the four grandchildren’s trusts.
The donor’s 1952 trustees have accounted in this court to themselves as the donee’s 1972 trustees. They have obeyed the directions of the donee Mrs. .Smith by paying the estate taxes out of the appointive property and have transferred the remainder to themselves as 1972 trustees for the purpose of setting up under the jurisdiction of this court the four grandchildren trusts.
The guardian ad litem has raised objections to the account in one respect — the request of the 1952 trustees to be allowed commissions under SCPA 2308 (governing commissions of trustees under wills of persons dying on or before August 31, 1956) for “ paying out the principal of the widow’s trust to themselves as the 1972 trustees under her will. The guardian ad litem in his memorandum of law relies on the doctrine of ‘ relation back ’ ’ as applicable to further trusts created by the donee of a power of appointment.
I
THE ‘ ‘ RELATION BACK ’ ’ DOCTRINE.
Professor Grlasser in his Commentary to EPTL 10-3.1 (McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 10-3.1, Supp., pp. 111-113) discusses adequately the doctrine of “ relation back ” and the applicable decisions. As he notes the doctrine has spawned a variety of problems in areas other than commissions.
*107 In the simplest of terms the doctrine is one of ‘ ‘ agency ’ ’. The theory is that a donor of the power appoints the donee as his agent to ‘ ‘ fill in ’ ’ the provisions of his will, albeit long after his own death. When the donee appoints the appointive property in further trust, under the “relation back” doctrine the donor’s trust and the donee’s trust are deemed a single continuing trust to be administered in the donor’s estate (not the donee’s) and all this though the income beneficiaries and the remainderman are different persons.
Certainly no one questions the utility of powers of appointment as a tool of pre- and post-mortem planning. But the corollary doctrine of “ relation back ” can often lead to incongruous and even absurd results. It has long been criticized. (Chanler v. Kelsey, 205 U. S. 466, 474; Matter of Dows, 167 N. Y. 227, 231; Simes, Devolution of Title to Appointed Property, 22 Ill. L. Rev. 480, 518.)
The “ relation back ” theory, that the appointive property passes to the appointees from the donor of the power rather than from the donee, has a modicum of reality only insofar as a “special” power (EPTL 10-3.2, subd. [e]) is concerned. It is then the donor who designates “ within such limits as he may prescribe ” the appointees of his property. Particularly when the special power is nonexclusive (EPTL 10-3.2, subd. [e]) the donee may be said to act as agent for the donor.
However when the power is a general power, the “ relation back ” doctrine is unsound. The owner of a general power possesses the equivalence of ownership. He can appoint to his estate his creditors or anyone else he may wish. He may appoint outright or in further trust. As a practical matter when a donee exercises a general power he is not acting as an agent of the donor; in truth and in fact the appointive property passes to the appointee from the donee and not from the donor of the power.
This distinction between the exercise by the donee of a general rather than a special power has long been recognized. (Restatement, Property, ch. 25, p. 1812; 45A N. Y. Jur., Powers — Doctrine of Relation Back, § 62.) It was expressed by Judge Ftjld in his dissent in Matter of Bauer (14 N Y 2d 272, 278) “ The traditional rule * * * assumes that ownership of the appointive property remains at all times in the donor of the power and that the donee of the power serves merely as a conduit or agency through which the donor’s intention with respect to the appointive property is realized. (See, e.g., 3 Powell, Law of Real Property [1952], p. 287.) Such an assumption is, *108 perhaps, justified where the power created is ‘ special ’ and confines the donee’s exercise of the power’ within the limits proscribed by the instrument creating the power. However, the assumption is certainly not justified when the power created is general ’ or ‘ beneficial ’, whether exercisable by deed or will or by will alone, and no restrictions of any other kind are imposed on its exercise by the donee. ’ ’
The distinction between a general and a special power is also expressed in the statutes. The rights of creditors of the donee are made to turn on whether the power is “special” (EPTL 10-7.1) or “ general ” (EPTL 10-7.2; 10-7.1): so, too, the computation of the permissible period of the Rule against Perpetuities. (See EPTL 10-8.1 and Professor Grlasser’s Commentary, McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 10-8.1, Supp., pp. 140-141.)
As discussed, finder the “ relation back ” doctrine the trusts created by the donee are required to be administered in the donor’s estate. As the cases establish it is not unusual to have the donee’s own assets administered in the courts of one State and the primary trust administered in the courts of another. However, corollary to the “ relation back ” doctrine are the doctrines of “merger” and “blending.” Here, too, the distinction between a general and special power exists. The donee of a general power may “ merge ” the assets of the primary trust into his own estate by appointing to his executor. Or he may “blend” such assets into his residuary disposition -.and therein appoint the combined assets outright or in further trust. Except in the rare circumstance that the donor’s will so permits, the donee of a special power has no authority to “ merge ” or “ blend ” the appointive property with his, Own and so avoid administration in separate courts or different States. (Matter of Walbridge, 178 Misc. 32.)
The complexities resulting from administration of the appointive property in one court and the donee’s own property in another court are illustrated by a long series of cases. (See, e.g., Matter of Simon, 75 Misc 2d 361; Matter of Walbridge, 178 Misc. 32, supra; Matter of Rothfeld, 120 N. Y. S. 2d 654; Matter of Camp, 64 N. Y. S. 2d 755; also, generally, Matter of King, 22 N Y 2d 456; Matter of Burchell, 278 App. Div. 450; Matter of Wainwright, 248 App. Div. 336.)
Our esteemed colleague Surrogate Jaeger in Matter of Snelham (69 Misc 2d 860) observing that the doctrine of “ relations back ” had been eroding in the “ merger ” area (as well as in the commission area, infra) ordered the transfer of the appoin *109 tive property to the trustees appointed in the donee’s estate without requiring them to qualify in the donor’s estate although it was conceded that the donee’s will had not effected a “ merger ” with the donee’s general estate. This is a practice which might very well be followed particularly where the estates are administered in different counties or different States and there is consent by the parties. Such a request would have been granted here on payment of the New York estate taxes.
II.
COMMISSIONS
As Surrogate Jaeger noted in Snelham (supra), the doctrine of “ relation back ” has been eroding in the commission area as well as the merger area.
The earlier cases under the “relation back” doctrine had held that commissions would not be allowed to the donor’s trustees for “ paying out ” to the donee’s trustees the appointive property. This was on the theory that the primary trust was a continuing trust for the life of more than one income beneficiary— the donee tacking on as agent of the donor the secondary income beneficiary by the exercise of the power and uppointing in further trust. (Matter of Terwilligar, 142 Misc. 249; Matter of Fordyce, 65 N. Y. S. 2d 331; Matter of Deutsch, 65 N. Y. S. 2d 332.) ; 'Decisions hold that when a testator creates a smgle trust with successive income beneficiaries, commissions are not payable at the death of the primary beneficiary. (Matter of Coutts, 260 N. Y. 128; Leask v. Beach, 173 App. Div. 873; Matter of Faroll, 39 Misc 2d 309 and cases cited.) It was argued in the earlier decisions that on the same principle, commissions could not be paid to the donor’s trustees for “ paying out ” to the donee’s trustees.
Fordyce (supra) and Deutsch (supra) were decided by Surrogate Foley. It was implied in the decisions that a different result must follow if different rather than the same trustees were appointed by the donee of the power. Indeed, in Matter of Cary (N. Y. L. J., Feb. 17, 1938, p. 823, col. 5) Judge Foley held that the same trustees would be allowed commissions where the donee imposed different and additional duties upon them.
A commission issue reached the Court of Appeals in Matter of Culver (294 N. Y. 321). The donor was the father and the donee the daughter. The donee expressly exercised her general testamentary power nominating the same corporate trustee. The corporate trustee had a contract limiting commissions in the donor’s estate. As the trustee in the donee’s estate it *110 requested its full “ receiving ” commissions. The court held (1) that the contract limiting commissions of the trustees while operative in the donor’s estate was not operative in the donee’s estate; (2) -that the -coincidence of naming the same corporate trustee in both estates should not be construed as a continuance of the donor’s trust nor determine the right to “ receiving ” commissions in the donee’s estate and (3) the court concluded (p. 325) “ Perhaps some comment is desirable upon the cases relied upon by the .Surrogate as authority for the proposition that under these circumstances, ‘ a trustee is entitled to but one commission because he is rendering but one service ’. These, we think, are clearly distinguishable. The fundamental and vital distinction between those cases and the instant case is that in each of them, one settlor set up one continuing trust for a two-life term by a single instrument. Under those circumstances, it could be said that there was but one trust and that a trustee thereof would be entitled to but one set of commissions. Here, however, there are two settlors, two instruments of trust, two actually different trusts and two sets of trustees.”
A few months later Surrogate Collins in Matter of Moyse (188 Misc. 1030) involving a general power of appointment from husband donor to wife donee with the same trustees in both estates distinguished Culver (supra) on the ground, inter alia, that receiving and not paying out commissions were involved — grounds which this court concludes were not justified by the record or the opinion. The Moyse decision distinguishing Culver was followed in Matter of Eginton (21 Misc 2d 179) á mother donor and son donee relationship with the trusts administered in different States by different trustees. .
Later Surrogate Keane in two separate decisions (Matter of Molyneaux, 44 Misc 2d 159 [father donor-son donee],; Matter of Stephens, 49 Misc 2d 1003 [unrelated donor-donee]) denied “ paying out ” commissions to the trustees in the donor’s estate. In both cases the power was general and testamentary but not presently exercisable — the latter a distinction which the Surrogate hinted might require a different conclusion. Both decisions are based on the ‘ ‘ relation back ’ ’ theory without regard to its erosion by Culver (supra).
Two later decisions in the First Department establish that the ‘ ‘ relation back ’ ’ doctrine as applied to commissions has been eroded and indeed “extinguished.” These are Matter of Moulton (1 A D 2d 771) and Matter of Davis (26 A D 2d 782);
Both Moulton and Davis were brief memoranda decisions. However, the records on appeal establish that extensive briefs *111 citing the cases heretofore mentioned (and others) were presented by the protagonists.
In Moulton the donor mother gave the donee daughter a general power which the latter exercised by appointing in further trust. The same corporate trustee had been appointed in both estates. The decision of the Surrogate based on rigid adherence to the “relation back ” doctrine was reversed and “paying out” commissions under SOPA 2308 allowed to the corporate trustee upon the authority of Culver (294 N. Y. 321, supra) the court stating (p. 771): “ The clear import of the majority opinion in that case [Culver] is that where a life income beneficiary of a trust creates a new trust under a power of appointment contained in the primary trust, particularly where the donee, although given the right to dispose of the principal absolutely, instead creates a new trust —a trustee, even though designated in both trusts, is not limited to one commission. The view of the majority in the Culver case was that in those circumstances, ‘ there are two settlors, two instruments of trust, two actually different trusts and two sets of trustees ’ (supra, p. 325).”
In Davis (supra), the donor father had given to a donee son, a special power to be exercised exclusively in favor of the son’s issue. The son, in his will admitted to probate in Florida appointed in further trust to his children. The donee son had designated a Florida corporate trustee. The court found .such trustee ineligible and permitted the son to designate the same corporate trustee accounting in the donor’s estate. Despite Moulton (supra), and its holding that Culver (supra) was determinative of the issue, the Surrogate followed Moyse (188 Misc. 1030, supra) which purported to distinguish Culver and denied commissions on the “ relation back ” theory. The Appellate Division reversed in a memorandum opinion citing Culver and Moulton.
These decisions have been followed in later cases. (Matter of Snelham, 69 Misc 2d 860, supra; Matter of Burnham, 75 Misc 2d 582.)
A decision denying commissions to the donor’s trustees is unjust and often absurd.
If a donee having either a general or special power appoints outright, the donor’s trustees must be paid “ paying out ” commissions. Because a donee, having the power to appoint outright, elects instead to appoint in further trust is hardly a just reason for denying commissions. This incongruous result is due to the courts ’ reliance on the ‘ ‘ relation back ’ ’ doctrine. The instant estate is illustrative. The donor’s trustees have *112 served for 20 years in the primary trust and may reasonably be expected to serve at least another 40 years (if they survive) before the termination of the four grandchildren secondary trusts. This is invariably so because the very purpose of the power of appointment is to permit extension of the duration of a trust for two or more generations of beneficiaries. Without doubt this was a prime consideration in the high court decisions heretofore cited which have eroded and indeed extinguished the “ relation 'back ” doctrine insofar as it has been applicable to commissions. It is reasonable to conclude that the donor’s trustees are invariably entitled to “paying out'” commissions whenever a donee has exercised a power (whether general or special) to appoint in further trust.
It is absurd to hold that “ paying out ” commissions should be made to turn on whether the donee names the same trustees or different trustees. For even under the ‘ ‘ relation back ’ ’ single continuing trust theory, when the donee designates different trustees, the trustees of the primary trust must be allowed “ compensation ” equivalent to commissions as “ removed ” or “resigned” (like deceased) trustees (Matter of McGrath, 74 Misc 2d 92) for turning over the appointive property to the donees “ successor ” trustees which is what they would become.
As a practical matter, the pre-1956 decisions based on the “ relation back ” single continuing trust theory had some basis in equity. Prior to 1956 the basic compensation of the trustees was measured by principal received and principal paid out. The annual income and principal commissions were minimal. A holding that the primary and secondary trusts were two separate trusts would have entitled the primary trustees to ‘ ‘ paying out” commissions and the secondary trustees to “receiving” commissions. Today, post-1956 trustees are not entitled to receiving commissions (iSCPA 2309). Their basic compensation is measured by annual commissions on principal and a minimal “paying out” commission. This consideration of “ double ” commissions which probably motivated the earlier decisions is no longer applicable.
The holding of this court is that there are here, as in Culver (294 N. Y. 321, 325, supra) “two settlors, two instruments of trust, two actually different trusts and two sets of trustees.” The donee’s trusts are post-1956 trusts and the commissions of its trustees will be governed by SOPA 2309.
The commissions of the accounting trustees and the compensation of the deceased trustee are allowed in the amounts requested which include “ paying out ” commissions (SOPA 230$).